IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:20CR342 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT J. ROHRBAUGH, II | ) | <u>UNITED STATES' TRIAL BRIEF</u> |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, by and through its counsel, Michelle M. Baeppler, First

Assistant United States Attorney, and Megan R. Miller and Erica D. Barnhill, Assistant United

States Attorneys, respectfully submits the following trial brief in accordance with this Court's

Trial Order.

I.      **STATEMENT OF THE FACTS**

At trial, the United States intends to offer evidence of the following:

In early 2015, co-conspirator Brandon Mace ("Mace")—while incarcerated in federal

prison for tax crimes—and others caused the filing of seven U.S. Income Tax Return Forms

1120 and 1041.  The returns were for various fictitious entities and trusts—Speed Werks LLC;

J.M. Glass Investment Trust; Mace Family Trust; Mace Financial Services, Inc.; Monarch

Investment Trust; Monarch Manufacturing, Inc.; and Iron Star Metals, Inc.—and requested a total of more than $8.5 million in refunds.  The returns had fabricated 1099-INT and 1099-OID forms attached and listed false taxes and expenditures that showed significant tax overpayments. The 1099-INT and 1099-OID forms were not filed with the IRS and listed non-existent entities. The tax returns were all dated in March 2015 and received by the IRS in April 2015.

The IRS flagged six of the seven tax returns as suspicious and did not generate a refund; the return for Speed Werks LLC, however, caused the issuance of a federal income refund check in the amount of $1,352,779.  The Speed Werks refund check, dated May 22, 2015, was mailed to Arlington, Texas, to the business address listed on the Speed Werks return.  In July 2015, the check was mailed from Texas to Chanlee Holdings in Canton, Ohio, for delivery July 3, 2015.

At least as early as June 2015, Mace began emailing with co-conspirator Terris Chanley Baker ("Baker") on the Bureau of Prisons ("BOP") TRULINCS email system about setting up entities for the scheme, and what to do with the money from the refunds.  Mace and Baker agreed to use an entity called "Chanley Holdings" to deposit any refunds they might receive and, once notified of the Speed Werks refund check, emailed about how to access and disburse those funds.

In July 2015, Mace also began emailing with Defendant Rohrbaugh, an attorney who had represented Mace in criminal defense matters in the past, about filing paperwork with the State of Ohio registering Speed Werks as a foreign entity.  Knowing that Speed Werks was not a legitimate business and that the refund check was based on a false tax return, Rohrbaugh filed the registration and accompanied Baker to KeyBank, where Rohrbaugh had his bank accounts, to open a checking account for Speed Werks and negotiate the refund check.

On July 20, 2015, Baker and Mace emailed again about accessing the funds.  Baker reported a conversation with Rohrbaugh wherein Rohrbaugh said he would "try to speed things up for us."  Baker told Mace that they had learned that there would be a hold on the refund check.  On July 28, 2015—ostensibly the end of the hold on the account, and the first day any withdrawals were made from the Key Bank account—Baker purchased a bank check payable to Rohrbaugh in the amount of $50,000.  That same day, Rohrbaugh deposited that check into his KeyBank business account ending in *2641.  On August 3, 2015, Baker purchased another bank check payable from Speed Werks' account to Chanley Holdings in the amount of $150,000.  That same day, Baker deposited the check into a bank account at CSE Federal Credit Union held in the name of "Chanley Holdings or Terris Baker."  And on August 4, 2015, Baker purchased two additional bank checks payable to Rohrbaugh in the amount of $50,000 each.  Rohrbaugh deposited both checks the same day; one into his KeyBank IOLTA account ending in *3189, and one into his KeyBank business account ending *2641.

Between July 28 and September 15, 2015, Baker used funds from the Speed Werks refund to purchase seven vehicles.  Three vehicles were titled in the name of Speed Werks; two were titled to Chanley Holdings; and one vehicle each was titled to Melesia Baker (Terris Baker's wife) and Tamikka Lipkins (Terris Baker's girlfriend).  On August 28, 2015, the IRS levied the Speed Werks KeyBank account, seizing the $671,648.00 balance.  On August 29, 2015, Mace called Baker from prison.  Among other things, Baker relayed: "Rohrbaugh says 'let me see what I can do.'"  On August 31, 2015, Rohrbaugh called Revenue Officer David Ross ("RO Ross"), who was assigned to the IRS's collection efforts on the Speed Werks refund check.  Rohrbaugh told RO Ross that he represented Speed Werks and had gotten the RO's contact information from Key Bank.  Rohrbaugh told RO Ross that Speed Werks was a Texas entity he

had recently registered in Ohio, and that the purpose of the business was to "customize automobiles." RO Ross advised that he would need a Power of Attorney ("POA") and other forms from the entity to release any information to Rohrbaugh.

On September 2, 2015, RO Ross visited Rohrbaugh at his law office in Youngstown, Ohio. RO Ross advised Rohrbaugh that the IRS's investigation involved a tax return filed claiming a non-existent withholding credit, which resulted in a bogus refund being issued. RO Ross told Rohrbaugh that he was attempting to collect the bogus refund and asked whether Rohrbaugh had received any funds from the refund. Rohrbaugh only told RO Ross that he had received $80,000—$50,000 in funds Mace owed related to a prior car theft representation, and $31,000 for expenses to assist Speed Werks in securing a business location. Rohrbaugh wrote a check dated September 16, 2015, from his KeyBank IOLTA account ending #3189 to the U.S. Department of Treasury, in the amount of $41,474. In the memo line he wrote "David Ross-IRS agent." Rohrbaugh mailed RO Ross this check after Ross delivered paperwork for a levy on Rohrbaugh's IOLTA account to Rohrbaugh's home. The levy was for the full amount of the Speed Werks refund.

## II.    CONTROLLING LAW

The Superseding Indictment alleges that Defendant Rohrbaugh committed the following violations of federal law:

### A.    Count 1 – Conspiracy to Commit a Federal Offense – 18 U.S.C. § 371

Count 1 alleges that Defendant Rohrbaugh conspired with Mace and Baker to commit certain federal offenses, namely Theft of Government Property in violation of 18 U.S.C. § 641 and False Claims Against the United States in violation of 18 U.S.C. § 287. The government must prove the following elements beyond a reasonable doubt:

- Two or more persons conspired, or agreed, to commit the crime of Theft of Government Property and/or False Claims Against the United States;

- The defendant knowingly and voluntarily joined the conspiracy; and

- A member of the conspiracy did one of the overt acts described in the Superseding Indictment for the purpose of advancing or helping the conspiracy.

Pattern Crim. Jury Instr. 6th Cir. 3.01A (Oct. 2021).

For the first element, the government must prove that Rohrbaugh agreed to commit one or more offenses against the United States.  As this Circuit's Pattern Instructions make clear, this does not require proof of any formal agreement nor proof that everyone involved agreed on all the details of the conspiracy.  *Id.* Instr. 3.02.  Rather, the government must prove that there was a mutual understanding, spoken or unspoken, between two or more people, to cooperate with each other to commit Theft of Government Property and/or False Claims Against the United States. *Id.*  The government does not need to prove an agreement to commit both of these crimes; proof of an agreement to commit one is sufficient.  *Id.*

The second element requires the government to establish that Rohrbaugh knowingly and voluntarily joined the conspiracy—*i.e.*, that he knew the conspiracy's main purpose, and voluntarily joined it intending to help advance or achieve its goals.  Pattern Crim. Jury Instr. 6th Cir. 3.03 (Oct. 2021).

The final element is that one or more of the conspiracy members committed one or more of the overt acts described in the Superseding Indictment to help advance the conspiracy.  *See* Pattern Crim. Jury Instr. 6th Cir. 3.04 (Oct. 2021).  The Superseding Indictment alleges numerous overt acts performed throughout the course of the conspiracy, and the government will prove their existence through evidence of tax filings, mailings, email and telephone conversations and financial transactions that Defendant and his co-conspirators performed.

B.     Count 2 – Theft of Government Property – 18 U.S.C. § 641 and 2

Count 2 of the Superseding Indictment charges Defendant Rohrbaugh with aiding and abetting Theft of Government Property in violation of Title 18, United States Code, Sections 641 and 2.  This crime has four elements:

- The money or property described in the Superseding Indictment belonged to the United States government;

- The defendant stole that money or property;

- The defendant acted knowingly and willfully with the intent to deprive the government of the use and benefit of its money or property; and

- The value of the money or property was greater than $1,000.

1 Model Federal Jury Instructions—Criminal, ¶ 23A.01 (Instruction 23A-2).

For the first element, the government must prove that the $1,352,779 U.S. Department of Treasury tax refund check belonged to the government.  Given the source of the refund check, the government anticipates that this element will not be in dispute.  The parties' proposed jury instruction on this element includes a provision on the timing of the theft.  This is because a government check remains government property until the check is deposited by the intended beneficiary, so the government may establish that Defendant actively participated in the theft. *See United States v. Adams*, 39 F. App'x 52, 55 (6th Cir. 2002) ("United States' underlying obligation to its payee is not discharged until the payee receives the funds," and thus the "United States retains a property interest in its checks, even after they have passed through the mails"); *United States v. O'Kelley*, 701 F.2d 758, 760 (8th Cir. 1983) (holding that unendorsed Department of Treasury check remains property of the United States even after receipt by beneficiary).

6

For the second element, the government must prove that Defendant Rohrbaugh stole the money that belonged to the government.  The parties modified this element in the proposed Jury Instructions to remove references to alternative means of violating the statute because the government is proceeding on a "stealing" theory.  More specifically, the government did not charge or include "embezzlement" because embezzlement more appropriately applies to someone who lawfully comes into the possession of money or property by virtue of a position of trust and then unlawfully converts it to his own use.  *See* 1 Modern Federal Jury Instructions—Criminal, ¶ 23A.01 (Instruction 23A-4).  "Conversion" similarly applies when someone lawfully comes into possession of money or property and then unlawfully usurps it to his own benefit, so the proposed jury instructions likewise do not instruct on conversion.  *See id.*, *see also Morrisette v. United States*, 342 U.S. 246, 271-72 (1952) ("Conversion . . . may be consummated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful.").

The government's evidence here will establish that Defendant stole the refund check through misrepresentation or dishonest means, which plainly fails within the ambit of "stealing" in violation of 18 U.S.C. § 641.  *See* 1 Modern Federal Jury Instructions—Criminal, ¶ 23A.01 (Instruction 23A-4) (Committee Comments) ("[s]tealing includes obtaining property by misrepresentation"); *see also* Pattern Crim. Jury Instr. 8th Cir. 6.18.641 (Committee Comments) (2021) ("The statute applies to any taking whereby a person dishonestly obtains anything of value belonging to another with the intent to deprive the owner of the rights and benefits of ownership."); *United States v. Oliver*, 238 F.3d 471, 472-73 (3rd Cir. 2001) (jury had substantial evidence to find violation of 18 U.S.C. § 641 where defendant "stole property of the Government by intentionally deceiving it about his continued employment . . . during the period of time he

received total disability benefits").  Because Defendant had no right to the underlying funds in the first place—having obtained them through his co-conspirators submitting false and fictitious tax returns—the government will establish that Defendant thus stole government property when he helped Baker and Mace cash the $1,352,779.00 refund check.

The third element is that the defendant acted knowingly and willfully, that is, that Defendant Rohrbaugh's actions were deliberate and done on purpose, not by mistake or accident. *See United States v. McGahee*, 257 F.3d 520, 529 (6th Cir. 2001) (government must prove defendant acted knowingly and willfully); *see also United States v. Parrish*, 238 F.3d 425, at *3 (6th Cir. 2000) (quoting with approval the district court's definition of "knowingly" as an "act . . . done voluntarily and willfully and not because of mistake or accident or other innocent reason" and "willfully" as "[a]n act . . . done voluntarily and intentionally and with the specific intent to do something the law forbids").  In the context of this case, the government will prove that Defendant acted knowingly and willfully by voluntarily and intentionally stealing money belonging to the United States.  Specific evidence of Defendant's knowledge and intent is more fully discussed below in Part III of this brief.

The fourth element, which is jurisdictional in establishing whether the crime of Theft of Government Property is a misdemeanor or a felony, is that the amount stolen is greater than $1,000.  The government likewise does not anticipate that this element will be in dispute since the face value of the tax refund check is $1,352,779.00.

As indicated above, the indictment also charges that Defendant aided and abetted the theft of the tax refund check.  As set forth in the proposed jury instructions, even if the jury determines that the defendant did not personally commit the crime, the government asserts that the jury could find that Rohrbaugh did something to help or encourage the crime with the intent

that the crime be committed. In this respect, at a minimum the government will introduce evidence that Rohrbaugh helped Mace and Baker set up an Ohio-based entity and negotiate the fraudulent refund check with the intent to unlawfully obtain and keep the tax refund money.

    C.    <u>Count 3 – False Claims Against the United States – 18 U.S.C. § 287 and 2</u>

Count 3 of the Indictment charges Defendant Rohrbaugh with aiding and abetting False Claims Against the United States in violation of Title 18, United States Code, Sections 287 and 2. This crime has three elements:

- On or about July 15, 2015, the defendant knowingly made or presented a claim to the United States Department of Treasury;

- The claim which was made or presented was a claim against the United States or a department or agency of the United States; and

- The defendant presented the claim knowing that it was false, fictitious or fraudulent.

1 Model Federal Jury Instructions—Criminal, ¶ 18.01 (Instruction 18-3).

The first element—submission—is accomplished when the defendant makes a claim for payment to the United States—here, in the form of presenting the tax refund check to KeyBank for payment. The proposed jury instructions thus account for the presentation of a claim to a third-party intermediary knowing that the third party will subsequently seek payment from the United States. *United States v. Spear*, 219 F. Supp. 3d 847, 855-56 (N.D. Ill. 2016) ("Presenting or cashing a tax refund check qualifies as presentment of a "claim" under Section 287.") (citing *United States v. Clarke*, 801 F.3d 824, 826 (7th Cir. 2015)); *United States v. Pointon*, 590 F. App'x 920, 924 (11th Cir. 2014); *United States v. Branker*, 395 F.2d 881, 889 (2d Cir. 1968)).

The second element—that the claim was against the United States—is unlikely to be disputed, since it is clear that a federal tax refund check is the type of claim that the government is expected to pay.

9

The third element requires the government to prove that the claim was false, fictitious or fraudulent.  In this regard, cashing a tax refund check that was issued based on false representations in an income tax filing constitutes a false claim for purposes of 18 U.S.C. § 287. *See Spear*, 219 F. Supp. 3d at 855-56 ("claim [of cashing refund check] was 'false' because Defendant was not entitled to a $135,000 tax refund for tax year 2009").  Again, specific evidence of Defendant's knowledge is more fully discussed below in Part III of this brief.

The indictment also charges Defendant under an aiding and abetting theory.  Again, even if the jury determines that the Defendant did not personally commit the crime, the government asserts that it could find that Rohrbaugh did something to help or encourage the crime with the intent that the crime be committed.

D.     Count 4 – Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h)

Count 4 of the Indictment charges Defendant Rohrbaugh with Conspiracy to Commit Money Laundering in violation of Title 18, United States Code, Section 1956(h). This crime has two elements:

- Two or more persons conspired, or agreed, to commit the crime of Money Laundering; and

- The defendant knowingly and voluntarily joined the conspiracy.

*See United States v. Threadgill*, 172 F.3d 357, 366 (5th Cir. 1999).

Count 4 more specifically charges that Defendant conspired to commit money laundering in violation of 18 U.S.C. § 1957, the elements of which are as follows:

- The defendant knowingly engaged or attempted to engage in a monetary transaction in or affecting interstate commerce;

- The monetary transaction was in property derived from specified unlawful activity;

- The property had a value greater than $10,000;

- The defendant knew that the transaction was in criminally derived property; and

- The monetary transaction took place within the United States.

Pattern Crim. Jury Instr. 6th Cir. 11.06 (Oct. 2021).

For the elements of conspiracy to commit money laundering, the parties request that the Court refer the jury to its instructions on the first two elements of a conspiracy under 18 U.S.C. § 371. The government is not required to prove an overt act or act in furtherance under 18 U.S.C. § 1956(h), so that element has been removed from the proposed Jury Instructions. *See Whitfield v. United States*, 543 U.S. 209, 214 (2005) ("Because the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the government need not prove an overt act to obtain a conviction."). The Superseding Indictment nonetheless alleges multiple acts in furtherance, proof of which will serve to establish both the Defendant's agreement and knowledge of the conspiracy as well as the existence of monetary transactions over $10,000 in criminally derived property.

## III. ANTICIPATED EVIDENTIARY ISSUES

### A. The Government May Introduce Defendant's and Co-Conspirators' Out-of-Court Statements.

The United States intends to offer out-of-court statements made by the Defendant and his co-conspirators. These statements will be admissible under one or more of the following theories: (1) the statements are non-hearsay; (2) the statements were made by a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A); (3) the statements were made by a party agent or employee pursuant to Federal Rule of Evidence 801(d)(2)(D); (4) the statements were made by a co-conspirator pursuant to Federal Rule of Evidence 801(d)(2)(E); or (5) the

statements are subject to another specific hearsay exception.[1]

              1.     Non-Hearsay Statements

A portion of the Defendant's out-of-court statements are not subject to the rule against hearsay because they are not being offered for the truth of the matter asserted.  Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted.  *See United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995).  As such, an out-of-court statement is not hearsay if (1) it does not contain an assertion, *see United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003), or (2) it is not offered to prove the truth of what it asserts, *see United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009).  For example, Defendant Rohrbaugh told Mace that there was a 9-day hold on the tax refund deposited at KeyBank because it was a new account.  This statement would not necessarily be offered to prove the truth of what it asserts, *i.e.* that there was, in fact, a 9-day hold on the bank account, but rather to show that Rohrbaugh was involved in gathering information for Baker and Mace about the status of the refund check.

Likewise, statements introduced to prove their falsity, rather than the truth of what they assert, do not implicate the rule against hearsay or the Confrontation Clause.  *See United States v. Porter*, 886 F.3d 562, 566-67 (6th Cir. 2018).  Statements that consist solely of questions or commands are not hearsay because they do not contain assertions.  *See Rodriguez-Lopez*, 565 F.3d at 314.  Other statements will be admissible to provide context to related evidence in the case.  *See United States v. Henderson*, 626 F.3d 326 (6th Cir. 2010) (holding that a non-

---

[1] Given the vast number of statements involved in this case, this section is not intended as an exhaustive list of every out-of-court statement that may be introduced by the United States at trial.  Rather, this section is intended to outline the legal theories the United States intends to rely on for admitting the statements.

party's half of a conversation with defendant was not hearsay, because it was admissible as context for defendant's half).

Finally, many of the co-conspirators' out-of-court statements qualify as verbal acts—such as when Mace told Baker to "text Bobby"—that are not subject to the hearsay rule.  "A verbal act is an utterance of an operative fact that gives rise to legal consequences."  5 Weinstein's Federal Evidence § 801.11(3).  For verbal acts, "[i]t is the fact that the declaration was made, and not the truth of the declaration, which is relevant."  *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008).  Thus, where a statement directs the formation and operation of a conspiracy or illegally solicits someone else to perform an act, that statement is not barred by the hearsay rules, regardless of the truth or falsity of its assertion.  *Cf. United States v. Forfana*, 543 F. App'x 578, 580 (6th Cir. 2013) ("words used to offer a bribe amount to 'verbal acts' with their own legal significance and do not qualify as hearsay").

### 2. Statements by a Party Opponent

Defendant's own statements are admissible against him personally under Federal Rule of Evidence 801(d)(2)(A) as statements made by a party opponent.  Fed. R. Evid. 801(d)(2)(A); *United States v. Matlock*, 415 U.S. 164, 172 (1974).  Other statements may qualify as adoptive admissions under Rule 801(d)(2)(B) if one or more of the co-conspirators "manifested an adoption or belief in the statements' truth."  *See United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006); *United States v. Safavian*, 435 F. Supp. 2d 36, 43-44 (D.D.C. 2006) (ruling that emails authored by defendant may be admissible as statements by a party opponent, and emails forwarded by defendant may be admissible as adoptive admissions).  In this regard, many of the Defendant's statements contained in the recorded conversations, text messages, jail emails, and

phone calls that the United States intends to offer between Rohrbaugh and Mace and will be admissible as statements of a party opponent.

       3.      <u>Statements by a Party's Employee</u>

The government will introduce limited statements that are admissible as non-hearsay statements of a party employee—here, those of Defendant Rohrbaugh's legal assistant, Kasey McCollum.  Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay when it is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.  The government intends to introduce recordings and text messages between Mace and McCollum, whose statements to Mace were made during and within the scope of her employment relationship with Defendant Rohrbaugh. McCollum met with Mace while working for Defendant Rohrbaugh at Rohrbaugh's law office and was engaged in preparing and filing trust and LLC documents for Mace on behalf of Defendant Rohrbaugh.  McCollum's statements to Mace are thus admissible as statements by a party agent or employee under Federal Rule of Evidence 801(d)(2)(D).

       4.      <u>Co-conspirator Statements</u>

Many of the statements in this case, including the bulk of the jail emails, phone calls, text messages and recorded conversations that the United States intends to offer, are admissible as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E).  Under that rule, an out-of-court statement is not hearsay if it "was made by the party's co-conspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  The proponent must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant against whom the statement is offered was a member of the conspiracy; and (3) the statement was made during and in furtherance of the conspiracy.  *See United States v. Enright*, 579 F.2d 980, 986 (6th Cir.

1978); *see also United States v. Warman*, 578 F.3d 320, 335 (6th Cir. 2009) (citing *United States v. Wilson*, 168 F.3d 916, 920 (6th Cir. 1999)).  The court may consider the underlying statements themselves in determining whether this hearsay exception applies.  *See Bourjilay v. United States*, 483 U.S. 171, 176-81 (1987).  The court may also conditionally admit co-conspirator statements subject to a later determination of their admissibility.  *See Enright*, 579 F.2d at 983-87; *see also United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002).  The co-conspirator hearsay exception does not depend on whether the government specifically charged the conspiracy or the involved co-conspirators.  *See United States v. Franklin*, 415 F.3d 537 (6th Cir. 2005).

A statement is "in furtherance of the conspiracy" if it was intended to promote the objectives of the conspiracy.  *United States v Monus*, 128 F.3d 376, 392 (6th Cir. 1997).  Statements made "in furtherance of the conspiracy" can take many forms, such as keeping co-conspirators advised or concealing aspects of the scheme.  *See United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000).  The statement may also "be susceptible of alternative interpretations."  *Id.*  Indeed, there is no requirement that the co-conspirator's statement be "exclusively, or even primarily, made to further the conspiracy."  *See id.* (quoting *United States v. Doerr*, 886 F.2d 944, 951-52 (7th Cir. 1989).

The Sixth Circuit has held that the following types of statements qualify as being "in furtherance of the conspiracy": statements that keep co-conspirators apprised of others' activities, *see United States v. Kelsor*, 665 F.3d 684, 694 (6th Cir. 2011); statements that allay the fears of other co-conspirators, *see Monus*, 128 F.3d at 392-93; statements that "prompt a listener to act in a manner that facilitates the carrying out of the conspiracy," *see United States v. Jerkins*, 871 F.2d 598, 606 (6th Cir. 1989); statements made the day after a truck robbery was

completed that explained what happened, who participated, how the stolen money would be distributed, and warned the co-conspirator not to get caught, *see Franklin*, 415 F.3d at 551-53; conversations designed to collect money, *see United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982); statements made to potential recruits to solicit their participation, *see United States v. Holloway*, 740 F.2d 1373, 1376 (6th Cir. 1984); and statements that "identify participants and their roles in the conspiracy," *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994).

B.      Admissibility of Limited Evidence that Pre- and Post-Dates the Conspiracies.

In its case-in-chief, the government intends to introduce limited evidence that pre- and post-dates the timeframes alleged in the two charged conspiracies.  As set forth in its Notice of Intent to Introduce Evidence under FRE 404(b), which was filed contemporaneously with this Brief and is incorporated herein, such evidence that pre-dates the conspiracy timeframes includes:

(1) an April 2011 IRS interview of Defendant Rohrbaugh about co-conspirator Brandon Mace; and

(2) testimony, journal entries, docket entries, and IRS documents regarding Rohrbaugh's prior representation of Mace in three concurrent but unrelated state cases between January 2008 and June 2011 (Stark County case 08CR00046, Geauga County case 08C00017, and Mahoning County case 10CR0111).

Such evidence that post-dates the conspiracy timeframes includes:

(3) five consensually recorded meetings and/or conversations between Rohrbaugh (or his legal assistant, Kasey McCollum) and Mace, which occurred between February 2018 and May 2018;

(4) legal documents that Rohrbaugh created as a result of meetings with Mace;

(5) a communications log that reflects (i) 134 text messages and (ii) 7 calls between Mace and Rohrbaugh between November 2, 2017, and June 22, 2018; and

(6) a communications log that reflects three text messages between Mace and McCollum between May 22, 2018, and May 23, 2018.

> 1. <u>The Proffered Evidence is Probative of Defendant's Knowledge and Intent and Inextricably Intertwined with the Instant Charges.</u>

> a. *Evidence that Pre-Dates the Conspiracy Timeframes.*

Regarding the first two categories of evidence that pre-date the conspiracies, the United States maintains that these events are not "bad acts" as contemplated by Rule 404(b), but rather go directly to Rohrbaugh's knowledge of Mace's past tax fraud schemes.  Evidence of Rohrbaugh's statements about Mace during an IRS investigation directly bears on Rohrbaugh's knowledge and intent, which Counts 1-4 of the Superseding Indictment place directly in issue.  For example, whether Rohrbaugh knew about a prior IRS investigation involving Mace is probative of whether Rohrbaugh knew that the $1,352,779 tax refund check was stolen from the federal government—which goes to the heart of the § 371 conspiracy and Theft of Government Property charges.  It is likewise probative of Rohrbaugh's knowledge of whether the $150,000 that he received from Mace and Baker were proceeds of unlawful criminal activity, which directly bears on the Conspiracy to Commit Money Laundering charge.  Because evidence of Rohrbaugh's past statement (which is a non-hearsay statement of a party opponent under Federal Rule of Evidence 801(d)(2)(A)) is directly probative of the knowledge and intent elements at issue in this case, it is admissible in the government's case-in-chief without resort to Federal Rule of Evidence 404(b).

Similarly, Rohrbaugh's prior legal representation of Mace in proceedings that involved the proceeds of an IRS refund check likewise are not "bad acts" as contemplated by Rule 404(b), but rather go directly to Rohrbaugh's knowledge of Mace's past tax fraud schemes.  This evidence establishes that Brandon Mace was arrested on December 29, 2007, in connection with

17

Stark County case 08CR00046 and was continually incarcerated until he was granted judicial release on Geauga County case 08C00017 on November 4, 2009. Rohrbaugh entered his first notice of appearance on behalf of Mace on December 12, 2007, and represented Mace in multiple court appearances throughout that almost two-year period, so he was aware that Mace was incarcerated that entire time and would have had no source of income.

Mace was again arrested on December 3, 2009 (roughly one month after his release) in connection with what would become Mahoning County case 10CR0111. Rohrbaugh entered his appearance on that case on March 30, 2010. Rohrbaugh eventually provided documentation from the IRS to the Mahoning County Prosecutor's Office showing that Mace was supposed to receive an IRS tax refund check for approximately $227,000.00 in the name of "Speed Werks" for the tax year 2008. Rohrbaugh negotiated a plea agreement with the Mahoning County Prosecutor's Office whereby the case would be dismissed without prejudice and Mace would deposit the entire refund check in Rohrbaugh's IOLTA account from which full restitution would be paid to the victim. However, the check was never deposited because the IRS stopped payment on the check when they discovered Mace had filed a fraudulent refund.

Rohrbaugh's prior representation of Mace—specifically, his knowledge that Mace was supposed to receive a large refund check in 2010 for a tax year in which he was incarcerated, that Rohrbaugh took steps to confirm this, and that the refund check was never deposited into Rohrbaugh's IOLTA—bears directly on Rohrbaugh's knowledge and intent when he was again contacted by Mace from federal prison in 2015 in connection with another large IRS refund check, which Counts 1-4 of the Superseding Indictment place directly in issue. The events of 2008 through 2010 relating to the IRS refund check are thus probative of whether Rohrbaugh knew or was deliberately ignorant to the fact that the $1,352,779 tax refund check at issue in this

case was stolen from the federal government—the crux of the conspiracy, theft and false claims charges.  It is likewise probative of Rohrbaugh's knowledge of whether the $150,000 that he received from Mace and Baker were proceeds of unlawful criminal activity, which directly bears on the conspiracy to commit money laundering charge.

b.  *Evidence that Post-Dates the Conspiracy Timeframes.*

Regarding the last four categories of evidence that post-date the conspiracies, the recorded conversations between Mace and Rohrbaugh in 2017 (and resulting documents that Rohrbaugh created from those conversations) likewise constitute *res gestae* evidence because the conversations between the co-conspirators—in which they discuss both the financial transactions at issue in the Superseding Indictment as well as planning for other, similar financial transactions—were made in furtherance of the charged conspiracies and aimed at avoiding their detection.  *See United States v. Howard*, 770 F.2d 57, 60-61 (6th Cir. 1985) (holding that recorded conversations between conspirators in a conspiracy to obtain insurance proceeds from a house fire were made in furtherance of conspiracy where conversations were at least partly designed to conceal the conspiracy, the insurance company's investigation into fire was still ongoing and the final disposition of proceeds was unresolved).  Indeed, at the time of the recordings, Baker and Rohrbaugh arguably were still capable of perpetuating the conspiracy and motivated to avoid its detection, and the recordings thus demonstrate continuity of purpose and continued performance of the charged conspiracies.[2]  *United States v. Hamilton*, 689 F.2d 1262, 1268-70 (6th Cir. 1982).

---

[2] This is true despite Mace's cooperation with the government: "[W]here, as here, the unarrested co-conspirators are still capable of perpetuating the ongoing conspiracy, the statements made by them to the arrested conspirator are admissible for Rule 801(d)(2)(E) purposes, even when the arrested conspirator was acting under the direction and surveillance of government agents to

Moreover, the charges in this case place the Defendant's intent at issue, and the recorded statements between Mace and Rohrbaugh serve as evidence of Rohrbaugh's knowledge, consciousness of guilt and participation in the conspiracy.  In this regard, the government is not bound by approximate start or end dates listed in the indictment; the scope of evidence introduced to establish the conspiracy may extend beyond an approximate date.  *See United States v. Mangual-Santiago*, 562 F.3d 411, 428 (1st Cir. 2009) (citing *United States v. Paredes-Rodriguez*, 160 F.3d 49, 56 (1st Cir. 1998)).  Evidence of actions which occurred after the conspiracy has ended may also be admissible.  *Id.* (citing *Lutwak v. United States*, 344 U.S. 604, 617 (1953)).

Here, many of the statements that the government intends to introduce from the recorded statements discuss the tax scheme at issue in the Superseding Indictment.  For example, during one recording, Defendant Rohrbaugh explains to Mace how the LLC that he previously set up (for Speed Werks) would have been used to manage Mace's assets, the limitations on the protections afforded by such an LLC, and his current recommendation to create a trust in connection with an LLC.  In that same recording, Mace and Rohrbaugh discuss how Baker paid Rohrbaugh to represent Mace and what Baker told Rohrbaugh he was going to do to help further the Speed Werks business.  And in another recording, Mace and Rohrbaugh express disbelief that the IRS "sent another one"—*i.e.*, another refund check—to Mace.  Each of these statements evinces Rohrbaugh's knowledge of and participation in the charged conspiracy, while also discussing the conspirators' ongoing planning for a similar scheme.  It is thus difficult, if not impossible, to divorce the past discussions from the future plans—for example, the context of

---

obtain evidence against the co-conspirators."  *See United States v. Emuegbunam*, 268 F.3d 377, 396 (6th Cir. 2001).

"another one" justifiably draws the inference that, whatever the parties are currently planning, this is not the first bogus IRS refund check that they received. The recorded conversations and resulting documents thus are probative of the parties' relationship and respective roles in the charged conduct and are necessary to complete the story of the charged crimes.

2.      In the Alternative, the Proffered Evidence is Admissible under Federal Rule of Evidence 404(b).

In the alternative, the United States intends to introduce this evidence under Federal Rule of Evidence 404(b) as probative of Defendant's intent, plan, preparation, knowledge or absence of mistake as it relates to the tax and financial crimes charged in the Superseding Indictment.[3] Rule 404(b) sets forth a general prohibition on introducing "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such evidence may be admissible, however, for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* In determining the admissibility of other acts evidence under Rule 404(b), the court considers three factors: (1) whether there is sufficient evidence that the act(s) occurred; (2) whether the other act(s) is admissible for one of the proper purposes under the rule; and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011). As set forth below, each of these categories of evidence is admissible under this three-pronged analysis.

---

[3] Consistent with this Court's Trial Order, the United States contemporaneously filed a Notice of its Intent to Use this Evidence under Rule 404(b).

a.     *Evidence that Pre-Dates the Conspiracy Timeframes.*

2011 IRS Interview

As an initial matter, there is sufficient evidence that the acts in question occurred to satisfy the first prong of this Court's inquiry.  A representative of the IRS will testify to having memorialized Rohrbaugh's statements during his April 2011 interview into a Memorandum of Interview.  Having satisfied this showing, the act is being introduced for a permissible purpose, namely Defendant Rohrbaugh's knowledge of Mace and/or Rohrbaugh's notice of the fact that Mace was being investigated by the IRS for a tax fraud scheme.

Finally, the act's probative value also is not substantially outweighed by unfair prejudice because the act tends to make it more likely that Defendant Rohrbaugh was aware of Mace's fraudulent acts.  Indeed, evidence of the Defendant's own statements about a co-conspirator and discussions with a co-conspirator are highly probative of the Defendant's knowledge and intent. When a charged crime requires an element of specific intent, "other acts" evidence is generally admissible to show such intent.  *See United States v. English*, 785 F.3d 1052, 1055-56 (6th Cir. 2015) (finding that defendant's involvement in prior Medicare fraud schemes was admissible under 404(b) to prove intent, knowledge and absence of mistake, where United States must prove that the defendant "willfully" defrauded Medicare); *see also United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994)).  And while the 2011 interview predates the charged conduct, it is "not so remote in time" to diminish its probative value.  *See United States v. Censke*, 449 F. App'x 456, 469 (6th Cir. 2011) (admitting acts that occurred three to five years prior to the charged conduct because the acts were "not so remote in time to fail in providing proof" of defendant's knowledge).

22

Rohrbaugh's 2008-2010 Prior Legal Representation of Mace

There is likewise sufficient evidence to establish Rohrbaugh's prior representation of Mace.  Certified state court journal entries establish Rohrbaugh's appearance/activity as counsel of record on Mace's behalf, and The Honorable Meghan Brundege, former Mahoning County Assistant Prosecutor, will testify regarding Rohrbaugh's plea negotiations in the Mahoning County case on Mace's behalf.  Like the April 2011 IRS interview, Rohrbaugh's prior representation of Mace and his negotiated plea involving a large IRS refund check that was never deposited into his IOLTA tends to prove Rohrbaugh's knowledge and absence of mistake as it relates to the tax refund check at issue here.  *See English*, 785 F.3d at 1055–56 (upholding admission of prior acts of Medicare fraud in a Medicare fraud case to show the defendant's intent and absence of mistake: "Here, the government needed to prove that English had defrauded Medicare 'knowingly and willfully.' 18 U.S.C. § 1347.  Evidence that English had been involved in prior Medicare fraud schemes—and was thus aware of how such schemes operated—showed that he had knowingly and willfully defrauded Medicare and had not done so by mistake.").  These documents and testimony also help inform the backdrop for Rohrbaugh's statements during the April 2011 IRS interview.

Finally, there is nothing unduly prejudicial about Rohrbaugh's prior representation of Mace that would substantially outweigh the probative value of this evidence.  It is likewise not too remote in time to diminish its probative value.  *See Censke*, 449 F. App'x at 469.  As such, this evidence is properly admissible under Rule 404(b).

b.     *Evidence that Post-Dates the Conspiracy Timeframes*.

Five Consensually Recorded Conversations Between Rohrbaugh and/or McCollum and Mace

There is sufficient evidence that these conversations occurred: they were audio recorded, co-conspirator and the government intends to play the relevant portions of the conversations at trial.  The recordings—which illustrate the nature of the relationship and course of dealings between the parties as well as the development, knowledge and execution of the unlawful relationship—serve the valid 404(b) purposes of knowledge, plan, and absence of mistake.  *See, e.g., United States v. Encarnacion*, 26  F.4th 490, 506-08 (1st Cir. 2022) (admitting recorded calls between defendant and co-conspirator about other, similar drug transactions that predated the charged drug conspiracy both as intrinsic to the conspiracy and, alternatively, as admissible under Rule 404(b); under Rule 404(b), the court concluded that the calls "were probative of the development of the charged conspiracy and of the nature of the working relationship between [the co-conspirator] and the defendant"); *United States v. Gessa*, 971F.3d 1257, 1261-62 (6th Cir. 1992) (admitting evidence under Rule 404(b) that witnesses had accompanied defendant to obtain drugs on a smuggling expedition before charged drug conspiracy as probative of defendant's ability and opportunity to participate in smuggling scheme); *see also United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989) ("Evidence of a conspirator's post conspiracy activity is admissible if probative of the existence of a conspiracy or the participation of an alleged conspirator, even though they might have occurred after the conspiracy ended.") (internal quotation omitted).

Regarding the third prong, apart from the recordings' obvious relevance to Defendant's awareness of Mace's prior tax fraud crimes and their planning for future, similar crimes, there is nothing particularly salacious or inflammatory about the Defendant's conversations with Mace.

And while Defendant may not like the introduction of these statements, not all evidence that "paints [a] defendant in a bad light is [] unfairly prejudicial." *United States v. Blanchard*, 618 F.3d 562, 569 (6th Cir. 2010).  And as further discussed below, the United States does not intend to play certain portions of the recordings that have minimal probative value in comparison to their undue prejudice, such as any reference to the status of Rohrbaugh's prior solicitation charge.  Moreover, the recordings involve a specific time range of conversations between two separate, named defendants in this case.[4]  As such, the probative value of the recordings is not substantially outweighed by any undue prejudice.

Legal Documents Created by Rohrbaugh

There is again sufficient evidence from this category because the government will introduce into evidence the physical documents that Rohrbaugh prepared for Mace.   Like the conversations between Rohrbaugh and Mace, the legal documents are being offered for a valid 404(b) purpose because they establish Rohrbaugh's intent and knowledge regarding the alleged conspiracy.   They also help establish Rohrbaugh's willingness to further the conspiracy, the conspirators' respective roles, and the continuation of their unlawful relationship.  The probative value of the documents is not substantially outweighed by any unfair prejudice because the documents were created as a result of interactions between Defendant Rohrbaugh and Mace. Again, because this category involves statements of two co-conspirators, they are admissible

---

[4] In this regard, any concern about the introduction of statements between co-defendants under *Bruton* and *Crawford* is inapplicable because the recordings involve statements of two co-conspirators, which are therefore admissible under FRE 801(d)(2)(E).  The statements are non-testimonial. *United States v. Blake-Saldivar*, 505 F. App'x 400, 410 (6th Cir. 2012) (concluding that defendant's confrontation challenge fails "because statements by co-conspirators are nontestimonial").  In addition, even if the statements were testimonial, any Confrontation Clause argument is to no avail because Mace will be subject to cross-examination.

under FRE 801(d)(2)(E).  And as statements made in furtherance of the conspiracy, they are likewise non-testimonial.  *Swain v. Lazaroff*, No. 3:15CV1770, 2016 WL 6600426, *1 (N.D. Ohio Nov. 8, 2016) (recognizing that "[s]tatements made in furtherance of a conspiracy are non-testimonial in nature").

<u>Communications Log between Rohrbaugh and Mace</u>

There is again sufficient evidence from this category because the government will introduce into evidence the communications log detailing the dates and content of communications between Mace and Rohrbaugh.   Like the other recorded conversations between Rohrbaugh and Mace, the communications log and its contents are being offered for a permissible Rule 404(b) purpose—to show Rohrbaugh's knowledge, as well as the nature and continuation of the unlawful relationship.  The evidence is not unfairly prejudicial because it involves specific communications between Rohrbaugh and his co-conspirator.

<u>Communications Log between McCollum and Mace</u>

There is sufficient evidence from this category because the government will introduce into evidence the communications log detailing the dates and content of communications between Mace and McCollum.  Again, the communications log and its contents are being permissibly offered under Rule 404(b) to show Rohrbaugh's knowledge, as well as the nature and continuation of the unlawful relationship.  The evidence is not unfairly prejudicial because it involves specific communications between Defendant Rohrbaugh's employee and a co-conspirator.  Although the statements involve Kasey McCollum, who in her individual capacity is not charged in this case, her statements can still be attributed to Defendant Rohrbaugh because Ms. McCollum was his employee pursuant to FRE 801(d)(2)(D).  Because these are statements between co-conspirators, they are admissible under FRE 801(d)(2)(E).

The United States thus respectfully requests that the Court permit introduction of the enumerated categories of evidence as *res gestae* or, in the alternative, for one of the government's properly enumerated purposes under Federal Rule of Evidence 404(b).  If the Court admits the recordings under a 404(b) theory (as opposed to a *res gestae*) theory, the government requests that the Court provide the Sixth Circuit Pattern Instruction 2.09, which limits the scope and potential prejudicial effect of the government's evidence to a proper Rule 404(b) purpose.

C.  <u>The Government May Introduce Only Those Portions of Defendant's Statements that are Relevant and Admissible under an Applicable Hearsay Exception.</u>

As set forth above, the United States intends to introduce numerous recorded conversations of Defendant and his co-conspirators as well as conversations between co-conspirators Mace and Baker.   The government may permissibly choose to admit, all, none or certain parts of those statements.

1.  <u>The Government Will Redact References to Defendant's Prior, Unrelated Criminal History.</u>

As an initial matter, the United States intends to redact certain portions of the Defendant's statements that have minimal, if any, probative value in comparison to their undue prejudice, consistent with Federal Rule of Evidence 403.  As previously stated, the government does not intend to play portions of Rohrbaugh's recorded conversation with Mace wherein he references Rohrbaugh's prior solicitation charge.

2.  <u>Defendant May Not Admit Self-Serving Exculpatory Statements.</u>

In addition to the statements that the government has voluntarily excised for Rule 403 concerns, should it choose, the government is permitted to introduce only the portions of Defendant's statements (or those of a co-conspirator) that are admissible under an applicable

hearsay exception and redact the remaining portions of the statement that are exculpatory. *See United States v. Gallagher*, 57 F. App'x 622, 626 (6th Cir. 2003) (court upheld parsing of defendant's statement to exclude self-serving exculpatory portions that related to defendant's entrapment defense). It is well-settled that defendants cannot seek to introduce their own self-serving exculpatory statements. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (citing *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied*, 522 U.S. 934 (1997)). While the Federal Rules of Evidence allow the government to introduce inculpatory statements made by a defendant, the "Rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *Id.* Thus, while the government is permitted to introduce some or all of a defendant's statements against him as non-hearsay admissions of a party-opponent under Rule 801(d)(2), a defendant is not permitted to introduce his own statements under the same Rule. This rule applies equally to the evidence the defendant seeks to introduce in his own case as it does to the evidence he tries to elicit through the cross-examination of witnesses.

Moreover, the "rule of completeness" under Federal Rule of Evidence 106 does not prohibit the government from introducing only portions of Defendant's communications or those of his co-conspirators. The rule of completeness "allows a party who is prejudiced by an opponent's introduction of part of a document, or a correspondence, or a conversation, to enter so much of the remainder as necessary to explain or rebut a misleading impression caused by the incomplete character of that evidence." *United States v. Cosgrove*, 637 F.3d 646, 661 (6th Cir. 2011). But the rule of completeness "does not make inadmissible evidence admissible." *Id.*; *see also Gallagher*, 57 F. App'x at 628-29 (quoting *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 718 (6th Cir. 1999)). It likewise does not override the prohibition on admitting self-serving,

exculpatory statements.  *Id.*  The court in *Cosgrove* found that because the messages that the defendant sought to admit were not "necessary to correct a misleading impression," the district court did not err in excluding some of the messages.  In the present case, admission of some of the communications sent among Defendant and his co-conspirators will not create a misleading impression for the Defendant.  Therefore, the United States should not be required to introduce the entire scope of conversations if they are irrelevant or self-servingly exculpatory at trial.

       D.    <u>Cross-Examination on Non-Qualifying Convictions</u>

Defense counsel should be prevented from commenting or cross-examining witnesses on allegations, past arrests, dismissed charges, pending unresolved cases or non-qualifying convictions under Federal Rules of Evidence 608 and 609.  A defendant's right to confront the witnesses against him through cross-examination is not absolute.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits upon such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant."  *Id.* at 679.  The government intends to present the testimony of several witnesses in its case in chief, some of whom have been arrested (but have not suffered convictions), have been merely accused of crimes without any further actions, or have otherwise unqualifying convictions.  Defense may not properly use these occurrences for impeachment.

Under Federal Rule of Evidence 609(a), "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year," and "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be

determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." *United States v. Morrow*, 977 F.2d 222, 227 (6th Cir. 1992).  In this regard, arrests, dismissed charges, pending, unresolved cases and acquittals are not convictions.  Moreover, the underlying factual basis for a prior conviction is generally not a proper subject for impeachment under Rule 609.  *See United States v. Lopez-Medina*, 596 F.3d 716, 737-38 (10th Cir. 2010); *United States v. Dansker*, 537 F.2d 40, 59-60 (3d Cir. 1976).  Thus, unless there is some other articulable, good faith basis for attempting to impeach a witness about prior arrests, dismissed charges, pending unresolved charges, acquittals, nonqualifying convictions, or underlying factual basis, no witness should be cross-examined in any manner about such subjects.  The United States hereby requests that the Court instruct defense counsel: (1) to notify the government prior to cross-examination of a witness of any prior convictions that they believe qualify under Rule 609(a); and: (2) if the government disagrees as to the proper impeachment purpose for one or more of the convictions, that the Court resolve the matter outside of the presence of the jury, since sustained objections in the presence of the jury during trial are a less effective means of honoring Rule 609 than is compliance with the rule before an improper question is asked.

  E. <u>Summary Evidence</u>

   The United States has obtained voluminous bank and tax records pertaining to this case. To present relevant evidence contained within these voluminous records in an effective and efficient manner, law enforcement agents prepared summary charts to which they will testify during the government's case-in-chief.  These summary charts are admissible evidence under Federal Rule of Evidence 1006, and the United States will seek to admit them as substantive evidence, which the jury could reference during deliberations.  Federal Rule of Evidence 1006

permits the use of summary charts by providing that "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  The Sixth Circuit has approved the use of summary materials.  *See United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998).

The summary charts will accurately depict the evidence to be presented to the jury and will streamline the trial considerably by condensing the records.  For each summary chart that the United States anticipates using at trial, the United States has complied with Rule 1006 by providing the underlying documents to Defendant and/or making the underlying documents available for examination and copying through discovery.  Additionally, the United States has produced and/or will produce all such summaries to Defendant in advance of trial pursuant to this Court's Trial Order.  The United States would propose including the Sixth Circuit Pattern Jury Instruction Section 7.12.

## IV.  JURY INSTRUCTIONS

### A.    Deliberate Ignorance

The government anticipates that Defendant may suggest—whether through opening/closing statements, cross-examination of witnesses, or other evidence—that he did not have the requisite knowledge to satisfy the knowledge element for one or more of the counts charged in the Superseding Indictment.  The government thus has included deliberate ignorance instructions in its proposed Jury instructions for Counts 1 and 4 and requests that this Court give the jury one or more deliberate instructions consistent with Pattern Instruction 2.09.  A deliberate ignorance instruction is appropriate when "(1) the defendant claims a lack of guilty knowledge; and (2) the facts and evidence support an inference of deliberate ignorance."  *United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012).

The instruction for Count 1 relates to Defendant's knowledge of the false or fictitious nature of the claim submitted to the government—here, the $1,352,779 tax refund check.  This instruction informs the jury that, if they believe Rohrbaugh deliberately ignored a high probability that the tax refund check was false or fictitious (or issued as a result of a false or fictitious return), then they may conclude that Rohrbaugh knew the tax refund check was false or fictitious.  The Sixth Circuit has upheld deliberate ignorance instructions regarding a defendant's knowledge of the unlawful purpose of a conspiracy.  *See United States v. Williams*, 612 F.3d 500, 505-508 (6th Cir. 2010) (upholding deliberate ignorance instruction on degree of knowledge requiring by defendant concerning the illegality of his actions and the actions for conspiracy charge); *United States v. Warshawsky*, 20 F.3d 204, 210 (6th Cir. 1994) ("a 'deliberate ignorance' instruction is permissible to show a conspirator's knowledge of the unlawful aims of a conspiracy"); *see also United States v. Patel*, 651 F. App'x 468, 471-72 (6th Cir. 2016) (finding no abuse of discretion in district court's deliberate ignorance instruction on defendant's knowledge of unlawful health care fraud conspiracy); *c.f. United States v. Dedman*, 527 F.3d 577, 594-95 (6th Cir. 2008) ("[D]eliberate ignorance of the falsity of the claim is sufficient to establish knowledge of the false, fictitious, or fraudulent nature of the claim" in prosecution under 18 U.S.C. § 287).

The instruction for Count 4 relates to Defendant's knowledge that particular financial transactions involved proceeds of criminally derived activity.  This instruction informs the jury that, if they believe that Defendant deliberately ignored a high probability that the funds involved in a particular financial transaction were proceeds of some form of unlawful activity, they can infer that he knew that the funds were in fact such proceeds.  Deliberate ignorance instructions have been upheld for money laundering charges where the evidence suggests defendant was

intentionally blind to the unlawful source of property involved in a financial transaction.  *See, e.g., United States v. Ashrafkhan*, 821 F. App'x 428, 435-36 (6th Cir. 2020); *United States v. Lalley*, 257 F.3d 751, 755-56 (8th Cir. 2001); *United States v. Wert-Ruiz*, 228 F.3d 250, 255-58 (3d Cir. 2000).

For example, in *United States v. Johnson*, 26 F. App'x 441, 443-47 (6th Cir. 2001), the Sixth Circuit affirmed the jury's conviction of a bank branch manager for conspiring to launder money using a willful blindness theory where the evidence demonstrated that the branch manager opened a bank account for the nominee of a drug dealer, filled out a signature card with incorrect information, processed a deposit for $110,000 in cash into the nominee's account, and lied to the IRS agent about meeting with co-conspirators before these events.  *See also United States v. Abbell*, 271 F.3d 1286, 1296-97 (11th Cir. 2001) (defense attorney who know his client was major drug dealer and that client's legitimate businesses were funded with narcotics profits, and who destroyed records before search warrant was executed, had knowledge that client's money was, at best, commingled funds); *United States v. Bornfield*, 145 F.3d 1123, 1129-30 (10th Cir. 1998) (jury could reasonably infer that accountant who knew client was drug dealer with limited legitimate income was deliberately ignorant of source of cash client gave him to convert to check).

If the evidence or arguments at trial ultimately do not support such an instruction as to Defendant, the government will withdraw its request for either of these jury instructions at the charge conference.  Alternatively, the government may request amended or additional deliberate ignorance instructions if supported by the arguments and evidence at trial.

B.    <u>Other Acts Evidence</u>

Consistent with this Court's Trial Order, and as addressed in detail above, the government has noticed certain limited acts that pre- and post-date the timeframe charged in the Superseding Indictment as admissible for one or more permitted purposes under Federal Rule of Evidence 404(b).  Should the Court find that any or all of these acts are admissible under a Rule 404(b) theory, the United States requests that the Court provide a specifically tailored limiting instruction modeled after Sixth Circuit Pattern Instruction 7.13.

## V.    TRIAL ADMINISTRATION

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615.  The United States designates IRS SA Andrew Durnell, the lead case agent, as its representative in this case to be present at counsel table throughout the trial.  SA Durnell's presence in the courtroom during trial is essential to the presentation of the government's case.  *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

## VI.    CONCLUSION

The United States is prepared to submit additional briefing on any issue should the Court

or circumstances require.

<div style="margin-left: 40%;">

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:    /s/ Megan R. Miller
        Megan R. Miller (OH: 0085522)
        Erica D. Barnhill (OH: 0079309)
        Assistant United States Attorneys
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3855/3967
        (216) 522-8355 (facsimile)
        Megan.R.Miller@usdoj.gov
        Erica.Barnhill@usdoj.gov

</div>